Next case is Caputo v. Wells Fargo Advisors, number 20-3059. You may proceed, counsel. Well, good morning to this honorable panel. My name is Tim Burgin with Potomac Law Group, counsel for appellant Christopher Caputo. If I may, I'd like to reserve three minutes of my time for rebuttal. That will be granted. The main issue presented is Mr. Caputo's contention that the district court erred by not vacating the arbitral award presented on public policy grounds. Would you want to deal with mootness first? I mean, we don't go too far if this case is moot. Do you want to deal with mootness first? Bankruptcy. Yes. Before the appeal was briefed, Mr. Caputo faced a situation where a vendor was enforcing the award. They gave him a deadline. He had to either pay it in full or obtain a stay or... The obligation was discharged during bankruptcy, right? The obligation was discharged, but during the bankruptcy, Mr. Caputo scheduled his counterclaims against Wells Fargo. Those were properly scheduled. The bankruptcy trustee elected not to pursue them but rather to abandon them back to Mr. Caputo, which occurred when the bankruptcy case was closed following the discharge of... So those counterclaims survived, you're saying? Yes. That is our position. His counterclaim, but the judgment, the district court's judgment has been discharged in bankruptcy. Is that correct? Yes. The judgment confirming the award for Wells Fargo was discharged in bankruptcy. I just didn't... I'm sorry. Please go ahead. So all that remains is Mr. Caputo's claim against his employer? Excuse me, Your Honor. It's his claim that remains. Yes, exactly. I'm just curious regarding mootness. Your petition to the district court, in it you didn't really, I don't think, contest the panel's denial of the counterclaims, the arbitral panel's denial of the counterclaims. So haven't they been forfeited at this point? Oh, no. The denial of the counterclaims, which is somewhat an issue because, as you recall, the arbitral panel denied interest in attorneys. Yes. But I didn't see where they were actually raised as a part of your petition. No. The issue of statutory, the counterclaims, the issue of statutory damages under the state labor laws and the defamation claim and the smaller claim for return of Mr. Caputo's deposit, they were not themselves grounds for vacatur of the arbitral award, and that was the focus of our petition before the district court. Please vacate the arbitral award on public policy grounds or manifest disregard or Section 10A3. And if the award is vacated, then that opens up the question of what remedies are available on Mr. Caputo's counterclaims. And you just referenced only in passing that he has some money that's being held in his Wells Fargo brokerage account that he would then be able to access if we wind up vacating the arbitral award, correct? That's true, because it's purely an offset. And we believe the panel did award defamation damages, which is what we asked them to do in denying attorneys fees and so forth. But that was an offset award. But may I ask that he never challenged the arbitration panel's denial of his claims in the district court? He certainly stated to the district court, albeit. Well, if he did challenge the arbitration panel's denial, doesn't that render his case moot? I don't think so, Your Honor. For example, the main argument Caputo made was that the award should be vacated on public policy grounds because the forfeiture provision was a violation of the state labor statutes. Those same statutes provide that if the statute is violated in this regard, in other words, earned income is withheld by an employer. Then in the case of Missouri, which is the governing law here, the statute provides that certain damages are automatic. In other words, they treat it as though the employee was continuing to earn the remuneration that was withheld. So it just flows automatically from vacature on grounds of the labor statute that the counterclaim would apply. It would have been a little backwards to start arguing on the basis of the remedy if vacature occurs without first arguing vacature should occur because the award enforced an illegal contract provision. Why don't we turn to the merits of your argument? We can go beyond mootness now. You can go to the merits of your argument. Yes, Your Honor. Your Honor, just quickly, for public policy grounds for vacature under Supreme Court authority, this panel has authority to look at the issues de novo as an exception. I don't see any toehold for public policy in this statute. How is the statute compatible with allowing us to review public policy? Look, I'm looking at 9 U.S.C. 10. Is there anything in there that allows us to vacate for public policy problems?  Section 9A4, award should be vacated if the arbitrators exceed their authority. How is a violation of public policy amount to an arbitrator exceeding his or her power? Because the Supreme Court held in the Stolt-Nielsen case in 2010. Stolt-Nielsen bracketed this issue. It avoided addressing it. I'm not talking about manifest disregard, Your Honor. I'm saying the holding in Stolt-Nielsen was that the arbitral panel there had exceeded their authority under Section 10A4 of the Arbitration Act by failing to apply governing law in that case. Failing to apply governing law? Yes. How is that a public policy? Well, that's a good question. You look at the particular law, some laws give rise to a public policy argument and some do not. But the classic case, and this is, I refer you to the Restatement of Contracts, Section 178.1 and Common A. The classic case for a public policy argument of the type we're asserting is where a statute regulates contractual relationships and provides that any provision which is contrary to the statute shall be null and void. Statutes are the primary source of public policy, and a statute which declares contractual provisions null and void is the classic instance of a dominant public policy which gives rise to the public policy argument. I don't understand, then, how this adds anything to just enforcing the statute of manifest disregard of law. It doesn't seem like you're arguing that there is any public policy apart from what is in enacted statutes. So the public policy argument doesn't add anything or do any work. Oh, I disagree. The Supreme Court held in W.R. Grace in Misko that an exception to the typical deferential review of arbitral awards is where there's a dominant public policy reflected in, the classic case is, a statute that holds illegal a particular contractual provision which was enforced by the arbitration. That's from Grace in Misko. That's the heart of the public policy doctrine. And when you combine that with a statute which says this type of contractual provision shall be illegal and void, overriding, I'm not sure I understand why it matters. What you're arguing for, though, is you argue that there's a tax policy against these tax avoidance practices. That's secondary. That goes to the transitional bonus, which is a little different. The main argument is the labor statute. The labor policy, you're saying, but I don't get. I mean, New Jersey case laws upheld retention provisions like this. Missouri law appears to be different. Retention provisions are very different, Your Honor, and courts distinguish them. So where's the well-defined and dominant policy coming from that shows that this violates labor policy? The statute provides that Section 2 and Section 3 of New Jersey and their counterpart sections of Missouri, that discharged employees are entitled to receive all of the remuneration that they were promised and earned. And the focus in this case is on Mr. Caputo's production bonuses, which unquestionably. So this is just this collapses into a general construing the terms. This is not some policy that's really apart from what's in the deal here. I don't see how it adds anything to the language about what he was, in fact, promised. Well, it's not about adding to what he was promised. It's about the fact that New Jersey and Missouri have declared very strongly with these statutes that void contrary provisions, that employers shall not exploit employees by withholding what they've earned, what they've already earned. All right. Let's want to manifest disregard of law here. How is is that does that survive, you know, Hall and Mattel? Because we've got nine U.S.C. Section 10-A. Does 10-A-4 or some other part of 10 allow us to consider manifest disregard of law? Yes, at least in some circumstances under Section 10-A-4, as construed by the Supreme Court in the Stolt-Nielsen case. As I mentioned. Stolt-Nielsen brackets the issue. Yes, they did. They noted it violated Section 10-A-4. Then they referred to a parallel manifest disregard statement. They did not reach the issue raised in Hall Street, but they noted that that standard was satisfied as well. In other words, it sort of dovetailed with the lack of arbitral authority under Section 10-A-4. All right. So it doesn't add anything to 10-A-4. It's just a way of rephrasing what it means for an arbitrator to exceed its powers? You mean the manifest disregard doesn't add anything? It does. The public policy argument focuses on the effect of the arbitral award as enforcing a contract that is illegal. The manifest disregard tends to focus on what was presented to the arbitrators and did they ignore it, the governing law. Okay. So if it exceeded their powers, if we understand that to include manifest disregard of law, at least if it's pled and argued, does it have to be specifically pled and argued? And how is that narrower or more focused than a general argument that the arbitrator got something wrong? I mean, clearly we're not going to do de novo review here. There's lots of case law that says we don't substitute our view for the arbitrators. So if that's right, how should we apply it here? Well, that's one big distinction between the public policy argument and the manifest disregard argument. Manifest disregard can cover a multitude of sins. I mean, you can disregard law procedurally in an evidentiary manner, in a tangential manner, or in a fundamental manner. But the public policy argument is focused on arbitral awards that enforce illegal contracts. That's a major principle of fundamental policy. The courts nor arbitrators enforce illegal contracts as expressly provided by statute. And in that context, the Supreme Court is clear and the circuits, as we pointed out in our brief, have all followed that there's an exception to the normally deferential review, standard of review of arbitral awards. This Court undertakes de novo review. In other words, did this award violate the statute? If it did, De novo review? De novo review. De novo review of an arbitral award. Let me refer you, if I could, to page 13 of our brief and note 21. Note 21 cites all of the U.S. appellate courts, including the Third Circuit, that have recognized this principle. For example, Service Employee International Union v. City Cleaning. These are decades before we get to Hall Street and Mattel. Well, right. That's a separate question. I suppose a question could be raised whether the public policy grounds for vacatur survives Hall Street. But this is the public policy grounds. It involves de novo review. And this is rooted in Supreme Court precedent. And as the Seventh Circuit pointed out in Titan Tire, it was not for the Court of Appeals to overrule those Supreme Court precedents. You know, that would be something the Supreme Court may consider in light of Hall Street. But the public policy doctrine is. Well, I think the point is that Hall Street has been decided. It's a fairly recent case. And it sort of changed the landscape here. Don't you agree? Well, it teed up an issue. The narrow holding, of course, was that you cannot contractually modify the standard of review. And then the Supreme Court in that process said the grounds under Section 10 and Section 11 are exclusive. Right. But 10A4 does not say it's reviewable whenever the arbitrator made a mistake of law. It says it's reviewable whenever the arbitrator exceeded their powers. And that implies something more than just got it wrong. Yes. And Ms. Snow was clear about that. It's in that situation that the public policy doctrine kicks in in its most pristine form. If the arbitral award is illegal, if the arbitrators are enforcing an illegal contract, it's fairly narrow, but our case fits it. I think our case fits it precisely. Can I ask you a question? At various points in your briefing, you contest or at least argue about at-will employment. Does it matter? And isn't it clear that this was an at-will employment? Oh, yes, it was at-will employment. And, correct, it does not matter in this case. Whether you're entitled to discharge an employee or not, the employee still has a claim for remuneration that he may have been deprived of. Those are just separate issues. Mr. Caputo has never sought to undo his discharge. Only the forfeiture of his production bonuses as a result. Okay, thank you. We'll get you on rebuttal. Thank you, Your Honors. You may proceed. Thank you. Good morning. May it please the Court, my name is Jonathan Scobie from the law firm of Stevens & Lee on behalf of Wells Fargo Advisors, which is now known as Wells Fargo Clearing Services, LLC. I did want to briefly touch upon two threshold questions, the bankruptcy issue and Hall Street. First of all, with respect to the bankruptcy issue, the judgment and the underlying arbitrator's award, awarding Wells Fargo approximately $1.6 million has been discharged. And one of the issues that we talked about in our briefing and supplemented with a 28-J letter was the idea of Mr. Caputo not being able to continue on challenging that award because it has been discharged in bankruptcy. And the relevant sections of the bankruptcy code relating to once a debt has been discharged, 524, the effect of that is that the automatic stay becomes an injunction. And third circuit case law finding that the automatic stay and ultimately injunction applies to the continuation of the action both to the debtor and the creditor. But we've got a counterclaim and we've got a set off of some money that's being held in this account. Why isn't that enough to keep this case alive? Well, I think it's accurate that the counterclaims probably are alive because in the bankruptcy action, the trustee did take those out of the bankruptcy estate. But those, I think, one, that's a limited review. And then two, it's our position those were waived and not raised in the district court because there's no actual articulation by Mr. Caputo in the district court that the center panel wrongly decided the denial was counterclaims because those were two separate issues in the award. One, Wells Fargo's $1.6 million that it was awarded. And two, the denial was counterclaims. Well, we're looking at mootness. Aren't we concerned about if we do remand this? It is a live case, isn't it? If it is remanded, it technically would be a live case as to the counterclaims, yes. I think that's probably accurate if you did remand it. And that's really our position that that, to us, seems to be inequitable given that his claims have already been discharged. Wells Fargo has no opportunity for offset at that point because a lot of his counterclaims are relating to these issues where Wells Fargo now has no ability to say, well, shouldn't our claim be offset here? Well, isn't that a beef with the bankruptcy process then? It could be that that needs to be raised with the bankruptcy court. I think it's still an issue for this court given the laundering case we cited, given the operation of 524 and the bankruptcy code. I heard you say that his claims have been discharged in bankruptcy. Is that accurate? No. His counterclaims were technically removed from the bankruptcy estate. His counterclaim? Yes. What is the counterclaim for? The counterclaims, I believe he has specifically fraudulent inducement claims, unjust enrichment claims. He has a general breach of the implied duty of good faith and fair dealing, a defamation claim. And then he makes a general claim for breach of New Jersey employment law, which I don't think that, I'm assuming that relates to the New Jersey statutes. I don't know if it's necessarily articulated in his complaint, but I think that's what he was referring to. The second issue is Hall Street. It's our position that public policy and manifest disregard of law standards do not survive after Hall. But Hall and Stolt leave these things open. They don't really resolve it either way. I think that's correct. It doesn't resolve it definitively. I think the language from the court, though, talking about the grounds for vacature are exclusive. I think you could read into that that really there shouldn't be judicially created or other standards that the parties created. Because I believe in Hall Street it was the parties creating separate standards that the court said, you really can't do that because you really have to look at it. Okay, but your friend on the other side basically construes public policy to mean nothing more than there's a statute that declares something void, in which case I'm not sure that it's doing any additional work here. But for manifest disregard of law, why isn't that a way of talking about exceeded their powers? If they go and exceed their powers and just ignore the law, more than just make a legal error, but just set aside the law and do rough justice, there's a bunch of arbitral case law out there that says, you know, labor arbitrators can't just dispense their own rough brand of justice. They've got to at least be considering the relevant body of law. So that looks like exceeding your power. Well, I guess what I would say to that is I think that particularly in this case, when we're talking about penal arbitration, I think the arbitrators have the authority to consider equity and not just the law. And I think what's telling in this situation is because if you look at the converse here, Mr. Caputo was arguing below to the arbitration panel that the panel should disregard the optimal employment doctrine, should find that there's a just cause standard that Wells Fargo had to meet. So then if they did that, that implies that it would be a manifest disregard of law that would fall within 10A4. Yeah, but I think our position, and I agree with you, you could make that argument, but I think our position is that I think it's within the powers of the arbitration panel to determine fairness issues and determine equity. And ultimately, if they did find that it was unfair for Mr. Caputo to be terminated under these circumstances with a prom note, I think that's probably within their powers to do. Now, ultimately, they did not find that and found in favor of Wells Fargo advisors. But I think ultimately the analysis is whether they exceed their authority. I'm not so sure they would have in that circumstance. So it's accurate. Is it accurate from your standpoint that the only thing left in this case is a counterclaim? Yes. His counterclaim. Yeah, his counterclaim. Yeah, now he's, and just maybe I'm misunderstanding the question, but he is appealing ultimately the award as to Wells Fargo. Our position is that's moot. That shouldn't be allowed. But I think it's undisputed that his counterclaims are outside of the bankruptcy estate, so those could still proceed. Our position is, though, that those were waived below. Except we measure mootness at the level of the case of controversy, not necessarily at the level of the individual claim, I would think. Well, I think, I mean, our argument is really that if you look, if you accept that he waived those arguments below, then there really isn't anything left because he shouldn't be able to appeal the Wells Fargo side of it, and that his counterclaims were not raised below and therefore waived, and so there really isn't anything left at that point. But he didn't challenge the arbitration panel's denial of those claims in the district court. He did not. Right. Yeah, that's our position. Isn't that a waiver of those claims? Yes, that's my point, yeah. So it's our position that he waived the counterclaims. Those are not right for appeal, and on top of that, the side of Wells Fargo's $1.6 million that he is appealing really is moot. So there's really nothing for the court to decide, in our opinion. So under the current regime, just to sort of summarize, after Wall Street and Stolt, you're saying public policy out, but manifest disregard maybe persists in some form? Well, I mean, I think, I don't think it persists. I mean, I think you have to ultimately come to the conclusion that the arbitrators exceeded their authority, and so I don't think it persists because I certainly think there's situations where maybe they do disregard the law and maybe they didn't ultimately exceed their authority. So I think that's ultimately the question is whether they exceeded their authority or not. Now, in this case, it's really of no consequence, in our opinion, to the outcome, because whether you apply the manifest disregard standard, it's still our position that he doesn't meet that. Now, how is it that this case, let's set aside the counterclaim because the counterclaim might have been waived or forfeited, but we can argue about, well, we still have the power to reach it, but why would the money held in the brokerage account, I mean, that was purely a set off against the judgment. If we vacate the arbitral award, then he can get the money in that brokerage account, right? If it's purely a set off. Yes, I think that's right. So then it's not moved. Well, that is true, yeah, and I forget exactly how much money it was, but I think that's correct because if you're vacating the arbitrated award and basically saying Wells Fargo cannot recover, then those monies would have to be returned. Okay. That wasn't part of the bankruptcy proceeding? It was unaffected by the bankruptcy discharge, I think. Well, okay, yeah. I'm sorry, I do not recall at this point whether that was in the schedule or unaffected or not affected, that particular portion. Right. And I guess the only other issue I guess I'll raise here is that the argument that he raises with respect to these are earned wages, I think, you know, the fundamental problem really is that it's contrary to the facts of this case, and I think it was well within the arbitrator's authority to find that that argument is contrary to the contract, contrary to what the bonus agreement says, contrary to what the prom note says. The bonus agreement talks about not just retention of employment and meaning a bonus retention clause, but there's other clauses in there as well that condition, that act as condition precedents. It's contrary, his argument is contrary to really his own understandings of these agreements and his past behavior having entered into these agreements with other financial services firms that the arbitrator were well within their authority to find that that was important. And ultimately, you know, the consequences of what he's arguing, I think the arbitrators understood this and rejected it because the consequences of what he's arguing is that if these are earned wages, then effectively he can jump around to different firms, take this compensation, and then leave and go to another firm, take the compensation and leave. And the whole point being, he's supposed to remain employed, he's supposed to continue to meet the client service level commitments, and there's a conditioned precedent to that. And therefore, it's not earned. And the arbitrator is well within their authority to make that finding. Do you have anything else, counsel? Nothing else. Thank you so much. All right. Thank you, counsel. We'll hear from your adversary in rebuttal. First, the question was raised, what are the counterclaims? I would point out that I succeeded the original counsel for Mr. Caputo in this case. However, the arbitrators from the get-go provided that within a few months before the hearing, the parties were invited to make a restatement of their claim damages. And I did so. That is Item 23 of the appendix at APP 367 and 364, Caputo's Restatement of Claim Damages. That specifies the counterclaims that we were proceeding upon at the arbitral hearing and the counterclaims that are the focus of this appeal. And there are basically, aside from the cash account that was withheld as an offset, there are basically only two. And one is the labor statutes. They provide, in the case of Missouri, for mandatory statutory damages if an employer withholds earned commission remuneration of an employee. And the damages are potentially substantial because under the Missouri law, you assume that the employee was continuing to earn the earned commission remuneration until it was paid, which did not occur here. We don't have case law, though, in either New Jersey nor Missouri that are on all fours with this particular set of facts, right? Well, I would say we've cited two Missouri cases in our letters, 28J letters, that are pretty much on point. One is the Lapp & Zee case, which I believe is a court of appeals case from 2013, which affirmed award of a commission bonus. And then you have the service purchasing company case of the Missouri Court of Appeals, which held that once remuneration is earned as set forth in advance by contract and the services have been performed, then that vests and is owing under law, regardless of whether it's payable then or later under the contract. I did hear you say you were proceeding in the past tense, or you are proceeding? You were proceeding, I heard you say? With the counterclaims? Yes, we are proceeding with basically two. One is the statutory damages, and the other one is defamation, which flows from, I believe, the arbitrator's recognition that Mr. Caputo was discharged without just cause, which basically shows his defamation claim because he told FINRA that, Wells Fargo told FINRA that they had just cause for discharging Mr. Caputo. Those are the two claims in this entire case that are pending. The statutory damage claim of Mr. Caputo. Defamation. Pardon me? And the defamation claim. And the defamation, as well as the offset matter. All right, Judge Bevis, do you have anything more? No. Okay, thank you, counsel. We will take this case under advisement. We thank counsel for their excellent briefing and oral argument today, and we wish you good health and wellness. Thank you.